company. Oral argument no side. Mr Haney for the p Good morning, your honors. May it please the court. Troy Haney appearing on behalf of the appellant, Vicki Koning, in this matter. As the court is well aware, this is an ERISA long-term disability case that we brought on behalf of Ms. Koning in the district court subsequent to a denial of her long-term disability benefits. Briefly by way of history, the record shows that in approximately 1999, Ms. Koning began experiencing back problems and reporting those problems to her primary care doctor. She was subsequently referred out in 2002, underwent her first low back surgery, did initially very well from that surgery, but then started experiencing additional low back problems and was referred out again in 2005 for a subsequent, more serious, I think, more invasive lower spine surgery, a lumbar laminectomy and discectomy. And at that point in time, again, she initially reported having pain relief from that surgery, but she had been self-employed. She owned a hair salon up to that point in time. And so I guess we're going to talk a lot about objective versus subjective here. Objectively, she was no longer able to handle the... Mr. Haney, let me make this suggestion to you to maximize the time that you have available. I'm not sure we even get to objective and subjective. You want to focus on the language that the district judge used, but this is de novo review, right? Correct. So we're supposed to look at the evidence in the record and we're supposed to determine whether the provisions in the policy are met, right? Yes, Your Honor. Now, the policy says there has to be a significant change in her ability to work, basically, right? Yes. A significant change in her functional capacity. What do you say is the beginning point and the ending point during which then we look at whether there has been a significant change? From when to when? That's our argument about this insertion of a temporal requirement. I'm just asking you what you say. It would be approximately... A change means from one time to another time. So what are the two times? Sure. It evolved from 1999 through 2012. We look to see if there's been a significant, not a change, but a significant change from 1999 to 2012. That's what we're supposed to do, right? I can't find any evidence of there being a significant change in terms of the medical records themselves. When I look at the treating physician's opinion that you refer us to, understandably, I can't see anything in that opinion that tells us why he thought that this woman met the definition in the policy to establish that she was disabled. I realize that he says, I think she's disabled. Okay, I get that. But he has to tell us, generally speaking, for a doctor to help somebody, they would have to say the basis of that conclusion and it would have to be cooperated by the record. So he doesn't say why she's disabled and the record doesn't show that there's really been any change. She's had these problems for a long period of time. She's been able to work, either with some pain or without some pain. So tell me what I'm missing. Where do I look at in the record that corroborates both the basis of the doctor's opinion and anything else in the medical records? Forget objective, forget subjective. Just where on the record does it show a change? I'd like to start just half a bridge upstream from that with the letters that were written to my client informing her of her ERISA rights and that her benefits had been denied and the reasons for that. Because if you look at those two letters, both initially denying the benefits and then denying the appeal, they don't say anything like, we don't find objective evidence of your disability or we don't see a quote significant change in your capacity to work. Please explain to us how your symptoms have evolved or why they have evolved so that a the individuals are always proceeding unrepresented would understand exactly what it is they have to submit. Now, to directly answer your question, Judge McKeague, I think it's a very good question. It's not a car accident kind of case where it just happened. It's a case that evolves over time and we do have in the record, obviously, and I know you're well aware, multiple MRIs and x-rays showing disc disease at various levels in both the cervical and the lumbar spine. But what you're looking for is an increase in symptoms. Well, no. It's not just an increase in a certain symptom. It could be new things that have happened to her. It could be new diagnoses. There could be evidence that, yeah, she could work okay in 1999, but her pain has gotten worse and it's manifested by request for more drugs, different drugs, stronger drugs. I have to go, I have to take leave because my back hurts too much. We see these cases all the time and there are a zillion different things that happen to people that corroborate their claim of subjective pain that means they can't work, whether you call that a need for objective evidence or not. We're looking for something that corroborates their claim of subjective pain that meets the definition in the policy. Well, it'd be very problematic, I think, if this was sort of a phantom type situation or even a chronic fatigue or that type of a case where it's hard to point to the causation for the pain. But in this case, when they're doing these repeat MRIs and they're looking and seeing that there's disc bulge, that explains the radiculopathy that she's complaining of. But is it showing a change in what they see in the MRIs, to just concentrate on that for a while? Or have the MRIs basically shown the same thing from 1999 to 2012? Again, change from when? She didn't always have this back. We started out, you said, we look at her condition in 1999 and we see if it's significantly changed in her functional capacity between then and 2012 when she claimed she became disabled and couldn't work. That's right. During that period, do the MRIs show a change? Well, in a sense, they certainly do. Or they verify what's going on in the spine that we don't necessarily know about in 1999 because that's when her pain complaints initially started. Has anybody interpreted, we don't read MRIs, has anybody interpreted her MRIs in their notes or reports or whatever to show a change from MRI A to MRI B or C or D or however many there were? Well, in the reports between 2002 in the first surgery and then 2005, the second surgery, certainly they did. There was nerve root impingement, which was the reason why they had to go in and do the second surgery. So we see change there. And then what you get after the 2005 surgery in 6, 7, 8, and 9, let's say, with Dr. Javery is that you have up to 12 months of pain relief from epidural injections and facet injections. But if you look over time, you see that the interval starts to decrease all the way up to... If I could get in here for a second. Sure. So we're focusing now on the language and policy that says there must be a significant change in condition. You've handled this case through the administrative appeals process, is that correct? That's correct. And you were asked for additional information regarding various aspects of this case? That's correct. And so was Mrs. Koenig. The plan, as I read, there are two decisions, never mention the phrase significant change in condition. Is that your reading? That's my reading. And you were never asked to submit information on that condition? No. They focused on whether or not she was disabled, as I read these. That's exactly right. And the district court is the only level in this process that used that particular phrase, no significant change in condition, as I read the record. It's the first time that I heard that argument in this case, yes. So what you were deferring was whether there was disability or not, not whether there was a significant change in condition. That's right. That's right. And so when we started oral argument in the district court, thinking that it was going to be about pre-existing conditions and whether or not she was disabled, nurses giving opinions against board-certified pain management doctors, the only in primary inquiry was in this preamble to the definitions, which I've made the argument that could arguably, that's not even part of the definition of disability. It's an assumption that you've had a significant change in your body. She did. She wasn't born with multiple level disc disease. It's something that evolved in her body over time to the point where she starts making complaints in 99. She had surgery in 2002, 2005. She's got post-laminectomy syndrome, bilateral radiculopathy. In up to 2012, at the point when she goes out of work, she's getting no pain relief from rhizotomies and epidural injections according to Dr. Fitzgerald in the most recent records. And that's when she goes out of work. So the change, the significant change in her work, in her ability to work or her functional capacity happens over years. It's an evolving condition. The definition of disability, there's a preamble that says you've had a significant change in your body that alters your functional capacity, such that colon, and then you get the definition of disability. You're no longer able to do the material and substantial duties of your own occupation. Here's what I don't understand to follow up on Judge Sargas' question. You say that the district judge was focused on, or prior to that, the company's focused on whether she's disabled. Well, the whole definition of disability says because of an injury or sickness, a significant change in her mental or physical functional capacity has occurred in which you are, and then it gives some examples. How would one determine whether somebody was disabled within the meaning of the policy without looking at whether there was a significant change? I'm sorry, I didn't mean to interrupt, but yes, Judge McKee, so to put a finer point on it, what was required of Mutual of Omaha is to tell us, are you not paying benefits here because you are saying that she is not disabled from doing her job? Because that's what they said in the letters. It's quite different to say, we don't think you've ever had a change, a significant change in your functional capacity. Judge Yonker raised that issue. That was the first time that I heard that issue, and quite frankly, I didn't understand what he meant, because I knew this was a woman who was otherwise healthy with no complaints of back pain all the way up until 1999 when she's 40 years old, and then she starts gradually having increased back symptoms and problems, two back surgeries, and the story goes on from there. And as further evidence of her pain increasing, objective, subjective, and it's always a problem with pain cases, is that the pain relief, the intervals in which she's getting rhizotomies, facet injections, epidural injections, and by the way, she was doing continuous PT, nonstop from 2009 to 2012 when she went off work, and interval PT before that from 2005 to 2009. She's getting less and less relief from all these modalities until she's eventually getting no relief, and Judge McKee gave us you that pointed out a minute ago, where's the uptick in pain medications and symptoms and so forth? We also see right down the stretch where she had to be prescribed Vicodin and Percocet, I believe, because her headaches were getting so bad she couldn't sleep at night. So you say we can find evidence in the record that there was either an increase in or a decrease in the type of medication during this period? I believe the record does support that, yes. But I believe that my primary point in being here today is what Judge Sargas raised, and that is this is an entirely different basis for denial than what Mutual of Omaha actually relied on in their letters. So basically then, I suppose that in essence you're claiming that they waived the reliance on a part of the definition that talks about a significant change. Well, I'd say more strongly than that. I don't really believe that's part of the definition. I believe that if you're disabled from performing the material and substantial duties of your job, it would be because your functional capacity has been reduced because you've experienced a change. Now that could be physical, mental. But you know, the odd part of that, and I'm not unsympathetic to your claim, but this is not the first case where we've been confronted with a set of facts where somebody's working in pain and soldiering on and trying to do just the best job they can, and then they finally say, I can't take it anymore. And then the company says, well, you didn't become disabled. You've been disabled all along. And you said, and somebody then will say, well, geez, I shouldn't be penalized for having tried to do my best while I was disabled. But in fact, that appears to be what this language and this policy directs itself to. And correctly or incorrectly, that's what the policy says. So we either have to follow the policy and look for a substantial change, because that's what it says, or we have to agree with you that the company didn't rely upon that and they've waived that basis for their decision. Seems to me those are really the only choices. But as to the first choice, in the context of a de novo review and construing terms against the drafter and in favor of coverage, I think there's only one way to construe that, that phrase about change in functional capacity. And that is, you have to look at this person's lifetime. There is no temporal restriction. It doesn't have to be from when you start work or some other period of time. Her body was changing over years. Think about the average person who's diagnosed with MS. It might take three or four years for the diagnosis to even become complete. It's a diagnosis of exclusion. And then they might work for another eight years with MS until ultimately they can no longer work. So if we're going to put temporal restrictions on there, it has to be clear in the policy when this functional change has to occur. Otherwise, you have to look at the total person and the total record. And here we had a person who was able to work in at least medium capacity, owning her own salon with no back complaints at all until 1999. Are you really serious when you say, if we look at substantial change, we look at whether somebody's body's changed from the time they were born to the time they went on? They claim disability? I take your point that that could be ridiculous from infancy on. We're all changing every day. But as to the condition that we're talking about here, to look at the record from 1999 to 2012, I mean, her back has gone out of control. First of all, anybody who has... You made the distinction earlier, using an automobile accident as an example. There's some conditions that are acute, is the word the medical profession would use. But there are other that are what are called progressive and usually debilitating. And that's the category I assume you're talking about. Yes, Your Honor. And I think... If we stick with those two categories, that's where this becomes interesting, I think. Because if it's progressive, that fits in with the definition of substantial change. It's a progressive disease. It was X, and she was able to work with it, and it progressed, and it got worse, and then she became unable to work. Seems to me if that's the facts, the facts prove that out, you win. But if it's not progressive, if it's just an intrinsic condition, if she was able to work, and not only that, work under that condition for however many years it was, then it seems to me they come back and say, she can't say she's disabled from that intrinsic condition because she manifested her ability to work in practice for, in this case, how long did she work for this company? Six years. Subject to this policy? So they say she's not... This non-progressive condition, if that's their case, couldn't possibly be shown to be disabling because she demonstrated she was able to work given that condition, whatever it was, for six years. Have you ever... You've done a lot of back cases, I assume? Yes. Have you ever seen a degenerative disc case get better? Never. Have you had cases where you have chronic back problems and they last for years and years and years? Typically after two back surgeries, and I bet if we counted them up, the record here is going to show probably over 30 to 40 epidural injections, another series of facet injections, and rhizotomies, which is an awful procedure. She's had multiple rhizotomies with all this physical therapy. With this level of treatment, absolutely not. And I think it's curious and telling, Judge McKee, to look at this record and find a woman who's treated for this long, consistently over time, and there's not one indication with any treater of symptom magnification or malingering or a woman who doesn't want to work, because when you do have people that don't go back to work or are trying to get out of work, you always see that somewhere in the record. Some doctor somewhere along the line says, I think she can do more, I think she's self-limiting, that type of thing. But here, her doctors are exactly the opposite. And I guess one last comment I would make. Before you go too far down that, I mean, your doctor that you want us to rely upon sends her out for the FCE, and the FCE suggests that she may be over-reporting her subjective pain or that her subjective pain is not corroborated by the record. That's the guy your doctor sent her to. Well, the FCE says a lot more than that, and I would ask you to read the entire report. But interesting about the FCE, there can't be a more subjective conclusion than she may, the operative word being may, she may be able to do sedentary or light work. That's what the FCE, quote unquote, concluded. FCEs are a snapshot done on one particular day and say very little, if not nothing, about a person's ability to go back to work consistently over time with predictability 40 hours a week, week in and week out, with regular sick and vacation time. And what I would submit, and this is a major problem with FCEs, is we don't look at how they're doing the next day after they go push, pull, tug, bend, kneel, stoop, and do these little things so that the FCE person can create these reports. We don't look at how they're doing the next two or three days. They could be wiped out from that. So it's a snapshot in time. If you look at the analysis, you will agree, I think, won't you, that it's your obligation when you're seeking benefits to put into the record the evidence that corroborates that you meet the definition of the policy. Now the problem with all that, as you pointed out earlier, is a lot of times these people are not represented, and they don't know how to do that at the time. The problem is much, much worse than that. Yes, it's our obligation to put in evidence to verify and support our claim. But the claim is carved out, the parameters of the claim, and what we have to demonstrate, that's what Mutual of Omaha tells us. You haven't explained to us why you're disabled, focusing only on the second part of the definition. Had they said, you need to somehow have your doctor quantify how you're getting worse or why you're getting worse, or why you were able to work in this sedentary job for almost six years and now you cannot, well then that's something we could have addressed. But to blindside her at this point in the process is unfair and it absolutely violates 1133 of ERISA. Are you wanting a remand as opposed to a grant of benefits? The only time I would ever ask for a remand is if I knew I was going to lose otherwise. That's what the case law says, right? It was denial of benefits, and to follow up on Judge Rogers, it would be, your argument is it's been unaddressed by the fund, and they would have to address it would be the on that particular point. Yeah, I'm not sure. In other words, we have this issue of was there a significant change in condition. The decider of that question is, and what we review, is a decision from the plan administrator. That's right. Your argument is they didn't make a decision, so the relief you would get, it would seem to me, would be to send it back to them and tell them to make a decision. Or in the alternative, did we respond to the actual request that they made in terms of when they denied this under Section 1133 of 503, 1133 of ERISA, when they have to set forth in detail so the average person can understand the basis of the denial, and they did that, and we responded to it with a board-certified pain management doctor against two nurse record reviewers, did we satisfy our burden under de novo review? I think that that's sufficient to award benefits. It's no great catastrophe by awarding benefits. We still have to prove up our claim again at 24 months, and then at any interval that Mutual of Omaha thinks is warranted thereafter, because you always have an ongoing obligation to... How's the 24 months work? I thought this was the long-term that we were talking about. Well, no. This claim, short-term disability was paid, and then when she went on to long-term disability, it was immediately denied with no benefits being paid. Now, the long-term policy... She didn't have to pay back the short-term benefits. No. This is just a claim dealing with long-term. Is this another 24 months, then? It's initially 24 months if you cannot perform the material duties of your own occupation. She got that? No. Okay, I'm confused. She got that in short-term? No. She received short-term disability from her employer, and I believe that's actually funded by the employer. It's like a payroll practice or payroll continuation period. Then she filed a claim for long-term disability insurance with Mutual of Omaha. Mutual of Omaha may have actually adjusted or acted as the claims administrator for the short-term. I do not believe they were the payer of the benefits, and that's a totally separate policy. Are there two types of long-term? One that lasts for 24 months, and then another after that? It's one policy with a bifurcated definition of disability. If you go back to that same page where the definition of disability is, it says you can't do the material and substantial duties of your own occupation. Then it continues in the very next paragraph and says, but after 24 months, you must be disabled from the material and substantial duties of all occupations to continue receiving benefits. That's all under the long-term policy? Correct. So we win this one. We still have to continue proving our claim. Yeah, but if you win this one, you're going to win at the end of 24 months, presumably because unless she's improved. Well, it is sedentary work. So it's not like it's a concrete buster that the definition change will make a huge difference because it's already sedentary work. So they could say, okay, yeah, we lost that she can't do this job, but she could do some other job. Yes. I got that. One other question. I know we're way over. I don't have the denial letters, and I know I can find them from the record, but I'm sure you're intimately familiar with them. You're seemingly saying that the denial letters honed right in on basically the first bullet under definition of disability, which is prevented from performing at least one of the material duties on a full-time or part-time basis. Is that what it says? Yes. So your argument is they were just looking at whether you could do the job, not looking at whether not being able to do the job was a result of a significant change. Is that the argument? That's my argument. Okay, I got it. Thank you. Thank you. Good morning, Your Honors. James E. Brenner representing the Apple Lead Defendant United of Omaha. Let me by way of footnote indicate that the short-term disability was handled by the company for which he worked, not by my client, the Defendant United of Omaha, and I think it was a self-insurance situation. The policy says, quote, disability and disabled means that because of an injury or sickness, a significant change in your mental or physical functional capacity has occurred in which you are prevented from performing at least one of the material duties of your regular occupation on a part-time or full-time basis and be unable to generate current earnings which exceed 99% of your basic monthly earnings due to that same injury or sickness, close quote. I think Mr. Haney is right that under ERISA you've got to tell somebody why you're denying their benefits with some specificity, right? That's the case, yeah. Now, he says you only focused in on a portion of the disability definition. You didn't rely upon whether that question of disability, whether the disability was a result of a significant change. Is that true or is that untrue? I don't think that's true because... What did you tell her? Because the letters to her quoted from the policy, quoted the language that I just read. The whole definition? The whole definition, including what I just read about significant change in functional capacity. I have the documents in front of me and on the first page there is about a, more than the full page when you go to the next page, of a quote of just what the policy language says. Then there's about four pages of analysis. We get to the end, that language isn't there. It talks about, for example, the first opinion says the documentation does not support the restrictions and limitations that would preclude Ms. Koenig from performing the material duties of a regular occupation as a human resource manager, therefore no benefits are payable. That's the language of the decision, isn't it? I don't have it in front of me. I take your honor as a good reader of the language. Now did your honor mean to say that the first part of what you just read from the first page or whatever includes the language from the policy? It does. No question. What you said is absolutely correct. But it says it and it just recites it. There's no analysis. And in the decision part of this letter, that language isn't mentioned. But it is quoted at the beginning. It's quoted at the beginning. That is correct. Thank you, your honor. But if the point of ERISA is to tell somebody why you're denying their benefits and then let them know that they can appeal, isn't it fair to tell them why? And so they don't have to guess about what part of the definition they are, is the basis of your decision? Well, but the letters do do that in the sense that it quotes the definition. And then it says that your situation does not satisfy the definition. I mean, that's what it boils down to. That you haven't satisfied the requirements of the disability definition in this case. That's what it comes down to. Necessarily. What Judge Sargas is reading to you sounds like it says the portion of the definition that they don't comply with is only the part that you can't perform the material duties. Not that there has or hasn't been a significant change. Is that right or wrong? I assume that that's correct. So if you didn't tell them that you were relying upon the significant change portion, then what do you say the law is as to whether the company has relied upon that and can't now come back and say, well, gee, there wasn't a significant change? What I say is that the definition being quoted, including significant change in functional capacity, and then the company going through the collected evidence that's been furnished to it, concludes that you haven't satisfied disability requirements under the policy, necessarily includes that you have not satisfied a significant functional change. But for example, did they ever say, you're not disabled, you've been doing this job for six years. That would be another way of saying there wasn't any change. Without having the letters in front of me, and I know your Honor didn't read the entire letter and it's five pages. There's two of them, actually, because there's the appeal that follows. Correct. Was this issue of significant change even argued before Judge Yonker, before he relied upon that portion of the policy? That was the entire argument, almost. Significant change, or whether she could do the job? Significant change. Mr. Brenner, in your defense, I noticed in the briefing before the district court, you had some reason to think this could become an issue, because you had briefed what the conclusion would be the same, but the reasoning would be different. And I believe you indicated also in your brief that you haven't weighed the other argument, but the primary decision made by the fund was of a different variety, and you briefed what I think is correct, is that this would not result in an award of benefits if this was an unaddressed issue. It would result in a remand for reconsideration of this issue. As to the other issue, which is preexisting condition matters, correct? But Judge Yonker expressly indicated that he was not going to decide that, because his analysis of significant change in functional capacity was sufficient to dispose of the case. And Judge Yonker spent virtually the entire substance of his colloquy with counsel, and his remarks from the bench, talking about whether there had been significant change in functional capacity. Mr. Haney basically would tell us that he's blindsided by that. He didn't know that's what you were relying upon, and Yonker went off on his own. Is that fair or is that unfair? I don't think it's fair, and I don't believe it. Well, you're talking about the district court. The district court, as you know and we know, there can be no new evidence. The review is of what the plan administrator did. The real question is, was there blindsidedness during the administrative review? Do you have any reason to dispute that statement by your opposing counsel? Yes, I don't see any blindsidedness at all. In the administrative review, the provisions of the policy, including significant change in functional capacity, what was well known to the plaintiff, is part of the contract, was stated in the letters, disposing of the claim and then the appeal. So that language is there at all times in this case. But the beginning of this process is not meant to be a lawsuit. In other words, a plan participant applies, there's documents, and if anything's missing, normally you'd expect the plan would write a letter back saying we need your birth certificate and we need proof that your condition has undergone a significant change. Is there anything in the record that indicates they ever asked the appellant in this case for that kind of information? Yes, in the sense that they asked for all medical records, all records that you, plaintiff, and I think she was represented by Mr. Haney on the appeal, in any event, that we want all the records, we want all the records having to do with your condition and that you believe support your position. And that necessarily includes the records on which is based the decision of significant change in functional capacity not being satisfied here. I mean, that's what Judge McKeague went through in his colloquy again with counsel and in his spoken remarks from the stand. Now, unfortunately, to my knowledge, there's no transcript of that hearing in this case because I believe that the plaintiff asked that there not be a transcript. But anyway, that's what happened in that analysis. Not be a, I'm sort of confused, not be a transcript of the oral argument before Judge Yonker? Is that what you mean? Yes. Yes. Well, saying, gee, there isn't, there shouldn't be a transcript, sounds like Mr. Haney's trying to hide something. No, I'm just saying. You don't want to pay for it in connection with the appeal, I'm guessing. That may be the case. But you're saying that was the substance of the argument? Absolutely. And that was because that's the way the argument was framed by the two lawyers or because Judge Yonker framed it that way in his questions to Mr. Haney? Both because that's how I framed it in a brief to the court and because the court framed it itself in those terms. Now, in your briefing in the district court, did Mr. Haney claim that you had waived the ability to rely upon the significant change language in the policy? Absolutely not. That, to my knowledge, that's an argument that just came up this morning and I believe it came up spurred by a question from Judge Zarkas. So bottom line is you're saying if you read these denial letters in their entirety, somebody should have been able to figure out that it was the entire definition of disability and not just whether you could perform the material duties of your job? That's correct, Your Honor. All right. Plus, I mean, the essence of the definition is significant change in functional capacity. What do you say is the time period we would be looking at, assuming that is an issue? Significant change implies something happened from time A to time B. What's A and what's B? Well, first of all, the problem is factually there's never been a change indicated to us that satisfies the definition. When would it be? It would be contemporaneous with the claim that she couldn't work any longer. Well, if on Friday you come in and say you can't work, you're not looking to see if there's been a significant change from Thursday night to Friday morning or Friday morning to Friday noon, are you? No, no. It's got to be a long... The look back for significant change has got to be longer than that. Well the look back is set forth in our brief and definitive... Just tell me what it is. Sure. Mr. Haney says first... First it's 1999 to 2012. Then he says, well, geez, it's really from birth to 2012, but he realized that probably wouldn't fly. So what do you say it is? I say it's the time she worked for the employer from which she stopped working. So it's not 1999, it's... She worked there six years, so it's what, 2000 and... 2006, I believe, to 2012. What if someone had started working there 18 months before, so now they have to prove a change in 18 months as opposed to the last five years? Strictly speaking, yes. But the policy doesn't say that anywhere, does it? The policy says significant change in functional capacity. Yeah, but it doesn't say over what period of time? Not expressly, no. But you say that it's the period of time within which the policy had been in effect. And I take it that goes back to 2006? Did you guys insure the whole time? No, this policy went into effect 2012, I believe. But to be clear, if you were a salesperson of disability insurance and you sold me a policy that says I have to be disabled during the time the policy's in existence, if I had a back problem or fibromyalgia or any number of chronic conditions, I wouldn't be buying very much for the first few years, would I? First of all, we would look at whether there's pre-existing condition. If you're telling me that the policy is bought... Let's say it's a group policy and there's no screening. So there is a possibility of pre-existing condition analysis in your hypothetical? Well, but the problem is if we make this date short, date that somebody starts working somewhere or date that the policy goes into effect, if people have a progressive debilitating disease as it looks like that's the sort of conditions we're looking at here, somebody changes jobs, they're at risk of being uncovered for disability insurance, it sounds like. It depends on the language of the policy, it depends on the specific circumstances. So it could be yes in some circumstances. But when we look at the lack of a temporal issue here, there is no definition of how long we look back. It seems to me those circumstances would come into play in how we interpret that language. Here in fact in the colloquy with the district court at oral argument and then the briefing by defendant in this case at the district court level as well as at this level, we looked at the records and Judge Yonker looked at the medical records going all the way back to 1999. If you look at those records, and most of the records are from 2006 forward, it's going to go back to 1999. If you look at those records, there's no explanation as to why after working for six years for longer. She went through three jobs during this time period and her position was each one was too hard to do. That's why she kept moving to less exertional positions. So it doesn't indicate that she's fine and that nothing's changing. If you just look at this job, it seems to me this employer is the reasonable one that we should be looking at. First of all, it says there's either got to be an injury or a sickness. Now there's no injury here, so we have to rely upon sickness and we assume that having chronic back problems would fall within the definition of sickness, generally speaking. Do you agree with that? Generally speaking, yes. So then we look to see if there's a significant change that has occurred and if there has, then we look to see if that significant change has caused her to be prevented from performing so on and so forth or unable to generate current earnings, at least sequentially, that's what it seems to say. So I'm assuming your position is regardless of how far back we go, during the six year period, she's working. She can't show a significant change from at any point during the time she was working for this employer to the time she said she was incapable of working. Is that basically the bottom line? You ever play the game pick up sticks? Isn't it more like one stick on top of the other and eventually one stick crashes the whole device down? Isn't that sometimes the situation when conditions progress? I'm familiar with that game. It goes back a long time. I don't think this case is exactly like that. My question is, I'm having a little trouble seeing the difference in the rubrics. If you could work, then you're not disabled under the definition if you're actually working because the definition is you're unable to work, right? And if later you can't work, then I don't see how that's different from saying there's been a substantial change. I mean if at point A you could work because you're working and at point B you can't work because the doctor says you can't work and what all these reasons are that say you can't work, hasn't there been by definition a substantial change? Before you could work, now you can't. So I'm not sure why you have to analyze it first in terms of substantial change and then look at whether you can work. Why can't you look and say right now, day this, you can't work, four years ago or whatever it was, the first year you were working, you could work, in fact you were working. So therefore there's a substantial change if in fact now you can't work. Let's just look at whether you can't work and not worry about all this substantial change jargon. I'm not saying that's what we should do, but I'm having trouble seeing what the difference is. The problem with what I hear your Honor saying is that factually there was no change that could be pointed to medically to explain why this individual stopped working in July of 2012. Then she can still work. Yes. Well the only thing, she can point to her fact that she says her back hurts, she can't work. So the question is do you have to have more than just simply saying I can't work. Do you have to have proof of that? Right. So you have to have proof. But if you have proof that you can't work now, why do you have to worry about whether there's been a substantial change? There has been a substantial change because you can't work now and before you could. So I don't see how the proof is going to be any different. You prove that they can't work now, maybe you do it by looking for MRIs or maybe you do it by looking for pain tests, all those ways that you prove it. Once you prove that, you've proved a substantial change, haven't you? Maybe you haven't proved it. I'm not saying you have. I'm just trying to tilt it at the jargon. The jargon seems to be sort of focused on something which is jargon. You can talk about whether they had the chance before to address this different way of looking at it, but I don't see how it's that much of a different way of looking at it. Are you disabled now? If you are, there's been a substantial change from when you weren't disabled. But if you're not disabled now, there hasn't been a substantial change and you don't get your benefits. What am I missing? What you're getting to is proof, as I understand it. Let me make it as simple as I can for myself. We've got an individual who worked six years for the American Metal and Plastics Company and she did this job in which she had clerical sedentary type duties. During that period, her medical records keep showing that she has the same level of disability that she's had throughout that six year period. Suddenly in the middle of 2012, in July of 2012, she goes off work. The company didn't tell her to go off work, didn't ask her to go off work. She goes off work. What she tells us in the claim form is that I couldn't continue to work because I couldn't drive myself certain places, because I couldn't do certain day-to-day activities in my life and all that. That she used to be able to do. But we have to look at the evidence here and look at the proof. The proof is that she drove herself to medical appointments. But you don't know what, she may go home and lie down for two hours after that. There's just so much we can gather in terms of evidence. I mean, that's speculation which wasn't part of the record. Let's go back to Judge Rogers' point, which seemed to me is a good one. She's working regularly and then all of a sudden she says that she can't work. If the proof shows she really can't work and corroborates that, then it seems to me that significant change caused by a sickness or an injury takes care of itself. That seems logical to me. You agree with that? I do. So then it comes down. It's really right back where we started 40 minutes ago, however long it was. What is the proof that there was a change in her sickness, progressive, disabling, whatever it was, that accounts for why all of a sudden she can no longer work? Isn't that what it comes down to? And the defendant says there was no such evidence of such a change. And it's a burden of proof for the plaintiff here, not for United of Omaha, to show that there was a significant change in functional capacity. Would be fair to both parties, would it not, for us to be looking at what her condition was not back to 1999, but rather during the period that she was actually working? That's correct. Which happened to be six years. Correct. Okay, I got it. Thank you. One final thing I'd like to note is that we do have this question of the FCE here, the functional capacity evaluation, which was prescribed by her own physician, which he seemed to look at as a kind of last resort because he didn't see anything else. He sends her to that, and she demonstrates on that, according to the person who gave the functional capacity evaluation, that there may be less than maximal effort being exerted by her, and that she may be overstating and exaggerating her medical condition, her degree of functional capacity. Further questions? Thank you, counsel. Thank you. What are we talking about with Mr. Brenner? We look back, she's working, period of time of six years. We look to see what the evidence is. I'm not going to call it objective or subjective. Look at the record. Was there a change caused by her back condition that meant she could no longer work? Isn't that fair? I really do think you go back a little bit further than the period of time she was working there because you have to get a good understanding of what her overall back condition is. But to follow up on Judge Sargas' point, even if you do start in 2006, you start out with a person, you have to look at the history, a person who has worked her way down from medium level job all the way into sedentary work while she's treating with pain management doctors, getting continuous PT injections and all this stuff. I got it. But she's doing the sedentary job for six years. So what does the record show was the change within that six-year period, beginning, middle, end, I don't care, that shows she no longer can take it? One, her pain management doctor who is intimately familiar with her, who has palpated spasm and objectively verified her conditions and has linked the spasms and radiculopathy to MRI findings so that there's positive clinical correlation between what she's complaining of and what he has seen on film. These doctors, you know how this works in the clinical setting, they're like human lie detectors. They're always looking for, especially with pain, they're always looking for people who are seeking treatment, who are trying to get pain pills, things like that. So he's constantly verifying her conditions and she's just hanging on by a thread in the most sedentary type job you can do until finally she can no longer do that again. And the proof of it is what he tells us. That would be a really good argument if the record corroborated that. If the doctor had just said that, I would say, oh, great argument, Mr. Haney. And if they would have told us that that's an issue we needed to address, he would have said that. And that gets right back to Judge Sargis again. And what did we know about- Isn't that inherently the issue, though? Pardon me? Why isn't it inherently the issue whether she's currently disabled? I mean, that's inherently the issue, right? Oh, it is. That is the only issue, whether she is disabled and whether the pain management- If you know that she's disabled, you'd have to show that something's changed from when she wasn't disabled. I mean, it's all the same question, it seems to me. But it has evolved to the point where she can't work and the verification of that- Well, here's- Did the doctor say she's over the edge right now? The last stick has been piled on? I'm looking at the doctor's report. He gives that opinion. That's his last paragraph, right? Right. He says she's disabled, but he doesn't say that from the material and substantial use She's gotten worse. Pardon me? I don't think he says that she's gotten worse, does he? Well, he- Did he previously say she could work? Yes. Absolutely. He supported her continuing to work as long as she possibly could. And does he tell us in his report why she could work one day and she couldn't work another day, whether it's sudden or progressive? Does he say that? He does. He absolutely says it by inference. Well, no, no. Wait a minute. By inference and- Well, that's why I direct objective evidence when he talks about the fact that now she's no longer getting any pain relief from this last epidural injection that I've done. The last one that he did in 2012, right before she goes out of work, she doesn't get pain relief from it. And if you go back and look at these serial injections that she's getting, she's getting less and less and less and less pain relief. She's needing pain meds now to control her headaches so she can sleep. She's getting an uptick in her requests for pain meds. She's getting less and less- Well, I don't think that would be absolutely right. If she could only work because of the saliatory effects of an epidural and then they no longer help her, that would be a change. And that's exactly what the record shows. So is there anything else that we should look for, in your opinion, other than the epidurals no longer work? What else- The treatment regimen in general, because she was also getting PT and rhizotomies and things like that. So I'm not just restricting it to that last epidural. I'm saying, looking over the history, and even if you want to look to 2006- Okay, PT. Does it say that she was getting PT and it was giving her relief and that's why she could work? But PT no longer helps her. Does it say that? Well, it doesn't say it like that because that question was never on the table. If you want to- Nothing was on the table back when she's being treated by the physician. We're looking at what his notes say, not what he comes up with later. Very clumsy language by me, and I apologize. What I meant when I said on the table was what they put in the first denial letter. We don't get a chance to respond to the second one, and the second one doesn't help them anyways. But in the first denial letter, where they don't ever even allude to the first part of the definition about- It basically says she's not disabled, and your client responded with a letter from her doctor outlining why he believes she was disabled. Against a nurse. And if you want to delve further into what we knew and when, you don't have to take my word for it. But you can look at the issues that we briefed in the underlying court. That issue's never even discussed, change. The first time change comes up is during oral argument in front of Judge Anker. But wait a minute. It is true that the argument was she was working, and she stopped working. Now that's change, right? So how can you say, well, change never came up? She was able to work? She wasn't able to work. That's change. No, what I'm saying specifically is whether we satisfied that aspect of the definition that, you know, had neutral OMA and said, you haven't demonstrated a significant change in your capacity to work. But instead- Well, we have to read the five-page letter to see if we agree with you on that. Okay. Fair enough. Thank you. Thank you. Anything further? Appreciate both arguments. Thank you.